**UNITED STATES COURT OF APPEALS**

**Filed 3/28/96**

**FOR THE TENTH CIRCUIT**

———————————

HONG IRWIN,                      )
)
    Plaintiff-Appellant,       )
)
v.                          )       No. 95-6379
)    (D.C. No. CIV-453-L)
BOARD OF REGENTS OF OKLAHOMA  )      (W.D. Okla.)
AGRICULTURAL AND MECHANICAL COLLEGES,  )
)
    Defendant-Appellee.      )

———————————

**ORDER AND JUDGMENT**[*]

———————————

Before **BRORBY, EBEL** and **HENRY**, Circuit Judges.

———————————

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

Plaintiff Hong Irwin appeals an order awarding attorneys fees to the Board of Regents of Oklahoma Agricultural and Mechanical Colleges (hereafter "the Regents") pursuant to 42 U.S.C. § 1988(b). We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Ms. Irwin, an individual of Chinese origin, enrolled in the MBA program at Oklahoma State University (hereafter "OSU") in 1985.  By the fall of 1989, she had completed her course work for a Ph.D. in marketing, but she did not take her comprehensive examinations until the spring of 1992.  She failed the examination by a unanimous vote of the marketing faculty.  However, she was not dropped from the Ph.D. program, and she was free to retake the examination.  She refused to retake the examination, and instead brought this action against the Regents, alleging she was subjected to a hostile environment at OSU and her failing score was the result of discrimination based on national origin, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d.  The district court granted summary judgment in favor of the Regents on the grounds Ms. Irwin had failed to show the grading of her examination was motivated by discrimination and that she had not shown a causal link between the allegedly hostile environment at OSU and her failing grade on the examination.

We affirmed the grant of summary judgment in an unpublished decision.  *Irwin v. Board of Regents*, No. 94-6438, 1995 WL 59725, (10th Cir. Oct. 11, 1995).  For the sake of convenience, we repeat our analysis of the evidence here:

> Plaintiff contends her affidavit contains evidence that creates an issue of fact concerning whether defendant's stated reason was pretextual (although she does not indicate what that evidence is or how it creates a fact issue). The affidavit recounts several allegedly hostile remarks made by faculty and nonfaculty at OSU. The hostile remarks of individuals who played no part in grading her exam cannot establish that those who did grade the exam discriminated against her. *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994) (in an age discrimination claim comments by non- decisionmakers are not material to the inquiry of discriminatory termination). Of the individuals who made allegedly hostile remarks, only Drs. Stephen Miller and John Mowen played a role in grading her exam.  While Dr. Ruth Krieger, who is mentioned in the affidavit as having made negative remarks, also graded the exam, we do not interpret her remarks as evidencing any hostility toward plaintiff based on national origin.

2

The only remarks allegedly made by Dr. Miller that have anything to do with Chinese nationality were the following: in August 1987, he told a joke about an Asian student who used the word "impotent" rather than "important" during his oral support of his dissertation; and in the spring of 1989 he told plaintiff not to wear a hat because she looked "Mongolian enough without it," Appellant's App. at 65, 67. While other remarks attributed to Dr. Miller indicate some friction between him and plaintiff, the remarks had nothing to do with her nationality.

Dr. Mowen allegedly told plaintiff over the telephone in June 1988, "if you do not change your ways, you are going to have trouble finishing the program." *Id.* at 68. Dr. Mowen also allegedly made derogatory remarks regarding plaintiff's Chinese origin. Dr. Mowen denies making these remarks. However, as explained below, even if he made the remark, this would not affect the outcome of the case. Thus, this dispute does not preclude summary judgment. *See Anderson [v. Liberty Lobby, Inc.]*, 477 U.S. [242,] 248 [(1986)] ("Only disputes over facts that might affect the outcome of the suit ... will properly preclude the entry of summary judgment.").

Plaintiff must show a nexus between Drs. Miller's and Mowen's remarks and the decision to fail her. *See Cone*, 14 F.3d at 531 ("isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in [ ] decisions."). We perceive no possible connection, based on the evidence presented, between Dr. Miller's casual comments and his grading of plaintiff's exam several years later. While Dr. Mowen's alleged comment is more troubling as it links plaintiff's national origin with her success in the program, it was made four years before the exam in an unrelated context. It therefore is not probative of discrimination. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1116 (7th Cir.1992) (noting racial remark made two years before plaintiff's discharge in unrelated context not probative of discrimination). Further, we note that Dr. Mowen gave plaintiff a "B" in the one class she took with him, and that he has published a research paper with another Chinese student. In any event, Dr. Mowen was only one out of eleven faculty members who unanimously voted to fail plaintiff, and there is no evidence that he influenced the other faculty members to discriminate against her.

Plaintiff's affidavit also claims that, although she had previously received assurances that a question on the exam would be in a certain area, defendant changed the area one week before the exam to an area she had not previously studied. However, other than a vague, conclusory statement that defendant had acted contrary to past practice, plaintiff presented no evidence that defendant had treated non-Chinese students differently. Further, it was undisputed that the specialty area question given to plaintiff addressed one of the most commonly discussed international issues in marketing, and it could have been answered by any well-informed Ph.D. candidate.

*Irwin*, 1995 WL 597257 at \*2-3. We therefore concluded Ms. Irwin "failed to raise a fact question whether defendant's reason for failing her was a pretext for discrimination" and that she "has demonstrated no link between the alleged comments and the actions of the professors in unanimously failing her." *Id.* at \*3.

After we issued our decision, the Regents moved for attorney fees pursuant to 42 U.S.C. § 1988(b), on the ground Ms. Irwin's action was groundless and unreasonable. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995). The Regents emphasized the fact that when Ms. Irwin did not pass her comprehensive examination in spring 1992, she filed this lawsuit rather than attempting to take the examination again, as the marketing faculty offered. The district court granted the Regents' motion and awarded them some $12,000 in attorney fees. In its order, the district court stated:

> The court is aware that civil rights actions are often based on circumstantial evidence. In this case, however, even assuming the facts alleged by [Ms. Irwin] to be true, the court found that [she] had failed to show, by circumstantial evidence or otherwise, that the actions of [the Regents] were motivated by discrimination because of [her] national origin. [Ms. Irwin's] action was frivolous because the facts developed in the record were totally insufficient to support [her] claims against the [Regents]. The court finds that [Ms. Irwin's] claims were unsupported by either the facts or the law and that [the Regents are] entitled to recover a reasonable amount in attorney's fees expended in the defense of [Ms. Irwin's] claims. In making this determination, the court does not assume that [Ms. Irwin's] action must have been unreasonable or without foundation simply because [she] did not prevail. Rather, the court's decision is based upon a sufficient showing that [Ms. Irwin] continued to litigate after it became clear that her claim was groundless.

Ms. Irwin now contends the district court abused its discretion in awarding attorney fees, because she brought her action in good faith and supported it with what she then believed was adequate circumstantial evidence. She reminds us that the Supreme Court has instructed district

courts to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable and without foundation." *Christiansburg Garment*, 434 U.S. at 421-22. We sympathize with Ms. Irwin's position, and we acknowledge that this is a fairly close case. However, our review is limited to whether the district court abused its discretion, not whether we would have reached the same conclusion had the motion for attorney fees been before us in the first instance. Rather, "[u]nder the abuse of discretion standard a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994 (citations and internal quotation marks omitted). We do not believe the district court's ruling conflicts with the Supreme Court's admonition against *post hoc* reasoning in *Christianberg Garment*. Indeed, the district court made it clear in its order that "the court does not assume that [Ms. Irwin's] action must have been unreasonable or without foundation simply because [she] did not prevail. Rather, the court's decision is based upon a sufficient showing that [Ms. Irwin] continued to litigate after it became clear that her claim was groundless." The decision whether to grant attorney fees was therefore within the "bounds of permissible choice" of the district court, and although we may have reached a different conclusion, we cannot say the district court made a "clear error of judgment." *Moothart*, 21 F.3d at 1504.

**AFFIRMED**.                    **Entered for the Court:**

_____
**WADE BRORBY**
United States Circuit Judge